UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

\-------------------------------------------------------------------x

In re:                                                                   Chapter 7

DECAPOLIS SYSTEMS LLC,                                                    Case No. 25-22390 (SHL)

                                    Debtor.

\-------------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION</u>

**A P P E A R A N C E S:**

**WALSH PIZZI O'REILLY FALANGA LLP**
*Counsel to the Debtor*
100 Mulberry Street, Ste 15th Floor
Newark, New Jersey 07102
**By:**    Stephen Vincent Falanga, Esq.

**KLUGER HEALEY, LLC**
*Counsel to the Raymond A. Joao*
521 Newman Springs Road, Suite 23
Lincroft, New Jersey 07738
**By:**    David A. Ward, Esq.

**VEDDER PRICE P.C.**
*Counsel for Epic Systems Corporation*
1633 Broadway, 31st Floor
New York, New York 10019
By:    Mitchell D. Cohen, Esq.
        Kevin J. Etzel, Esq.

**QUARLES & BRADY, LLP.**
*Counsel for Epic Systems Corporation*
2020 K Street, NW, Suite 400
Washington, D.C. 20006
By:    Lauren C. Bolcar, Esq.

**HOWARD P. MAGALIFF**
*Chapter 7 Trustee*
437 Madison Avenue, 24th Floor
New York, New York 10022

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Epic Systems Corporation's ("Epic") Motion to Dismiss Case for cause under 11 U.S.C. § 707(a) and, in the alternative, for improper venue under 28 U.S.C. § 1406(a) and Rule 1014(a)(2). *See* Motion to Dismiss Case [ECF No. 13] (the "Motion"). The above-captioned debtor ("Debtor") and its sole member/principal Raymond Joao ("Joao") oppose dismissal. *See* Mem. of Law in Opp'n [ECF No. 18] ("Joao's Opp'n"); Mem. of Law in Supp. of Opp'n [ECF No. 19] ("Debtor's Opp'n"). The Chapter 7 Trustee Howard Magaliff ("Trustee") has not taken a position on the Motion. For the following reasons, the Motion is granted and the case is dismissed.

## BACKGROUND

This case was filed under Chapter 7 of the Bankruptcy Code on May 2, 2025 (the "Petition Date"). *Petition* [ECF No. 1]. According to its filings, the Debtor's principal place of business is 600 S. Dixie Highway, Apt 605 West Palm Beach, FL 33401, but its mailing address is 122 Bellevue Place Yonkers, NY 10703, where Joao resides and directs the Debtor's operations. Pet. at 1; Debtor's Opp'n at 4.

A. The Debtor and its Creditors

As explained by Joao, Debtor is a "patent-licensing entity that licenses intellectual property developed and patented by Joao." Debtor's Opp'n at 2; *see also* Joao's Opp'n Ex. 1 ("Joao Decl.") [ECF No. 18-1]. After a year of no active operations and a decision to reduce costs associated with extensive pre-petition litigation across several states, "Debtor elected to file for bankruptcy and allow an independent trustee to administer its estate." Debtor's Opp'n at 6; Joao Decl. ¶¶ 49-50.

2

In its schedules, the Debtor lists only $619.95 in assets and $1,567,473.60 in liabilities. Schedules at 2-3 [ECF No. 2] ("Schedules").  Debtor's assets consist of a checking account with $619.95 at the New York-based Ameriprise Financial, two unvalued patents, and two unvalued potential claims against Garteiser Honea.  Schedules at 3-5; Debtor's Opp'n at 7.  Debtor also lists 26 executory contracts, all of which are related to "settlement and [a] patent license agreement." Schedules at 10-15.  Debtor does not identify any secured creditors but lists five unsecured creditors associated with various judgments and attorney's fees.  Schedules at 8-9.  Finally, Debtor reports having made $0 in revenue since 2023, but includes four pending legal matters.  Statement of Financial Affairs, ECF No. 3 ("SOFA").

The Debtor's business—and its related pre-petition litigation—is directly related to the Motion.  The Debtor, or a related non-Debtor corporate entity, filed several pre-petition lawsuits against various other parties for infringement of certain patents in various jurisdictions, many of them against Epic or customers using Epic's software.  *See* Motion Ex. 15 ¶ 3 ("Martin Decl."); *see* Joao's Opp'n at 2.  These lawsuits by the Debtor (or its affiliates) have, in turn, prompted counter claims and legal action from the parties sued by the Debtor.  Motion at 2-3.

In one jurisdiction, Joao Bock Transaction Systems—an entity owned by Joao and another unrelated member—filed and lost a patent infringement suit in Delaware federal court when the defendant successfully counterclaimed and was awarded attorney's fees.  Motion at 5-6; *Joao Bock Transactions Sys., LLC v. Jack Henry & Assocs. Inc.*, 2016 WL 1267159 (D. Del. Mar. 31, 2016) *aff'd* 714 F. App'x 1019 (Fed. Cir. 2018).  Joao Bock Transaction Systems shortly thereafter filed for bankruptcy; that bankruptcy case was later dismissed on the defendant creditor's motion.  *See* Order Granting Emergency Motion to Dismiss [ECF No. 22], *In re Joao Bock Trans. Sys., LLC* Case No. 16-11249-MFW (Bankr. D. Del. Mar. 22, 2017).

3

In a second jurisdiction, the Debtor in 2021 filed, then voluntarily dismissed, a patent infringement suit against Epic in the federal court for the Western District of Texas.  Motion at 2. Debtor also filed similar suits against two of Epic's customers in the same district and a "duplicative lawsuit" in the Eastern District of Texas against two other Epic customers, one of which was Christus Health.  Motion at 3.  According to Epic's senior vice president, Epic has indemnified and defended each of Epic's customers that were defendants in these three lawsuits. Martin Decl. ¶¶ 3 & 4.  Christus Health was awarded $643,248.03 in attorney's fees in its respective Texas action in March 2025.  Motion at 4.

In a third jurisdiction, Epic filed suit in early 2022 in federal court for the South District of Florida seeking a declaratory judgment against the Debtor with the goal of consolidating various disputes between Joao and the Debtor, on the one hand, and with Epic and Epic's customers on the other.  Motion at 3-4.  Ultimately, the Florida court determined the Debtor's patents were invalid. This determination was affirmed on appeal.  *Id*. at 4.  In July of 2024, the Florida court awarded Epic $634,457.23 in attorney's fees in connection with the litigation.  *Id*.  In awarding attorney's fees, the Florida court found the Debtor's actions were, "if not fully spurious, [] dilatory at best" due the lack of substantive strength of Debtor's case, the large number of other identical and therefore meritless lawsuits it had filed, and the Debtor's conduct within the case.  Order on Motions for Bill of Costs and Attorney's Fees [ECF No. 113], *Epic Sys. Corp. v. Decapolis Sys., LLC*, Case No. 22-cv-80173-DMM (S.D. Fla. July 30, 2024).  In early 2025, after Epic served a writ of execution for their awarded attorney's fees, Debtor produced financial documents that revealed that Debtor received nearly $500,000 in revenue from settlements with various other defendants.  Motion at 5.  These financial documents also showed that the Debtor had transferred

nearly all these settlement funds to Joao throughout 2022, leaving the Debtor without any significant assets. Motion at 5; Motion Ex. 8.

In the fourth and final jurisdiction, Joao filed an action against Epic in New York State Court seeking a declaratory judgment that Joao is not liable for Debtor's debts. Motion at 6. This lawsuit was filed in late 2024 before Epic took steps to execute its judgment for attorney's fees in the Florida action. *Id*. This New York action was ultimately removed to the federal court for the Southern District of Florida in May 2025 on Epic's motion. Motion at 7.

Nearly all creditors in this case arise out of the Debtor's pre-petition litigation. Epic is one of the five unsecured creditors, scheduled as holding a judgement in the amount of $634,457.23. Schedules at 8. All but one of the other creditors are customers of Epic's software that have been sued by Joao or the Debtor, including, Bexar County Hospital District, Central Texas Community Health Centers, and Christus Health. Martin Decl. ¶ 3. The claims of Epic's customers total $1,551,093.60. Schedules at 8. Epic has indemnified each of these customers for any of the claims made against them by the Debtor or its affiliates; as a result, Epic represents that it is the party entitled to recover any monies paid on the claims of Epic's customers in this bankruptcy. Epic's Reply in Support of Motion at 6 [ECF No. 21] (detailing evidence of Epic's indemnification of its customers). The final unsecured creditor, Kluger Healey LLC, is scheduled as having a claim for $16,380.00 for legal fees and expenses. Schedules at 9.

B. Epic's Motion

Epic seeks to dismiss this case under 11 U.S.C. § 707(a) based on bad faith, dilatory tactics, and forum shopping. *See* Motion. Specifically, Epic argues there is cause for dismissal under Section 707(a) because the Debtor filed this case in bad faith to thwart its creditors (namely, Epic) after Debtor received an adverse judgment resulting from Debtor's pattern of filing meritless patent

5

claims. *See* Motion at 8-10.  As further evidence of bad faith, Epic points to the timing and existence of the transfers between the Debtor and Joao leaving Debtor virtually insolvent.  Motion at 9-10.  Epic also contends that Debtor engaged in forum shopping when it chose to file lawsuits against Epic and Epic's customers in Texas and New York when neither defendant had any ties to such locations.  Motion at 16-18.  In the alternative, Epic seeks to dismiss this bankruptcy for improper venue or to transfer it to the Bankruptcy Court for the Southern District of Florida. Motion at 2 & 18.  Epic argues that the Debtor has "no meaningful domicile, residence, or significant assets in New York[,]" and contends that the South District of Florida is a more convenient venue given the current underlying dispute pending there.  Motion at 18.

In opposition to the Motion, the Debtor and Joao assert that this case was filed in good faith and that venue is proper because Debtor's principal assets, books, records, and sole member have always been located within Westchester County.  Debtor's Opp'n at 1.  Joao also argues that the transfers he received from the Debtor were all in the ordinary course of operations as its sole member of the pass-through corporate entity, the last of which occurred in 2022.  Joao Decl. ¶¶ 35, 39, 40.  Debtor further argues that the timing of the transfer of assets to Joao is not indicative of bad faith because it occurred six months before the judgment was entered on attorney's fees, and this bankruptcy case was not filed until after the second judgment of attorney's fees was entered.  Tr. of July 30, 2025 Hr'g 47:13-19 [ECF No. 24] ("Transcript"); *see also* Tr. 50:21-51:11 (Joao's counsel highlighting the timing of the bankruptcy filing in relation to the Christus Health judgment).  In defense of the prepetition patent litigation, Joao argues that he hired the law firm Garteiser Honea to prosecute patent violations of Debtor's two patents and presumed it would operate within the boundaries of the law.  Joao's Opp'n at 4.

At the hearing on the Motion, an additional issue was raised regarding whether this case is essentially a two-party dispute between the Debtor and Epic. Tr. 17:16-23. In response to the question, Epic argued that this bankruptcy case is a two-party dispute because the patent infringement lawsuits were all directed at customers using Epic's software, and Epic had been paying its customers' legal fees in each individual case as part of its corporate policy. Tr. 19:4-18; 20:1-7; *see also* Epic's Reply in Support of Motion at 6 [ECF No. 21] (detailing evidence of Epic's indemnification of its customers). Debtor and Joao disagreed, arguing that while Epic may have indemnified its customers' claims, each claim remains held by an individual customer. Tr. 34:15-35:1; 37:2-14.

## DISCUSSION

### I. Venue

"Venue is proper in any jurisdiction where the debtor maintains a domicile, residence, principal place of business *or* where its principal assets are located for at least 180 days before filing the bankruptcy petition." *In re Enron*, 274 B.R. 327, 341 (Bankr. S.D.N.Y. 2002) (emphasis in original); *see also* 28 U.S.C. § 1408(1). "There is a presumption that the district where the bankruptcy petition is filed is the appropriate district for venue purposes . . . and the burden is on the party disputing venue to establish that position by a preponderance of the evidence." *In re Farmer*, 288 B.R. 31, 33 (Bankr. N.D.N.Y. 2002) (quoting *In re Handel*, 253 B.R. 308, 301 (1st Cir. B.A.P. 2000)); *see also In re Manville Forest Products Corp.*, 896 F.2d 1384, 1390-1391 (2d Cir. 1990). When it comes to corporate debtors, the "principal place of business" is "the place where a corporation's officer direct, control, and coordinate the corporation's activities." *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010).

7

Arguing that venue here is improper, Epic contends that Debtor is a corporate entity organized under Florida law with its principal place of business in Florida. Motion at 18; *see* Pet. Epic also argues that the Debtor's principal asset is the $619.95 in account funds that are technically located in South Dakota. Tr. 17:1-6. By contrast, Debtor contends that its principal assets are located at 122 Bellevue Place, Yonkers, New York 10703. Pet.; Tr. 17:1-6. This address is the permanent residence of Joao, the Debtor's principal and sole managing member. Joao Decl. ¶ 42.

There is no dispute that Joao, at all relevant times, has resided in New York and solely managed the Debtor's operations from his home office. Joao Decl. ¶ 42. Given this undisputed fact, the Court concludes that the Southern District of New York is a proper venue here as the principal place of business where Joao "direct[s], control[s], and coordinate[s] the [Debtor's] activities." *See Hertz*, 559 U.S. at 92-93.

As an alternative to dismissal based on venue, Epic seeks to transfer venue to the Southern District of Florida. But "[t]ransferring venue of a bankruptcy case is not to be taken lightly." *In re Enron Corp.*, 274 B.R. at 342 (citations omitted). "[A] debtor's choice of forum is entitled to great weight if venue is proper." *Id*. (citations omitted). Accordingly, "[a] heavy burden of proof rests on the moving party . . . ." *In re Virginia Park 1, LLC*, 672 B.R. 569, 580-81 (Bankr. S.D.N.Y. 2025). A court will grant a motion to transfer venue only when such transfer is in the interest of justice or the convenience of the parties. *Id*.; 28 U.S.C. § 1412. Convenience of parties is determined through assessing six factors: "(1) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result." *Virginia Park*, 672 B.R. at 582. "When

8

considering the "interest of justice," the court applies a broad and flexible standard. The court considers whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *Enron*, 274 B.R. at 342 (quoting *Manville Forest Products Corp.*, 896 F.2d at 1391).

In support of its argument to transfer venue, Epic raises both convenience of the parties and interest of justice. As to convenience, Epic argues that judicial economy is preserved by transferring this case to Florida, where parties are already engaged in litigation and "expended substantial resources addressing the underlying dispute." Motion at 18. As to the interests of justice, Epic declares the Debtor has engaged in judicial forum-shopping by filing within this jurisdiction, and the Court should transfer the case to prevent this practice. Motion at 19.

Ultimately, the Court concludes that Epic has failed to meet its heavy burden for a transfer of venue. As discussed above, venue here is proper—and thus entitled to great weight as the Debtor's choice of venue—because it is undisputedly where Joao both resides and manages the Debtor's operations. Two of the convenience factors—proximity of debtor and of witnesses necessary to the administration of the estate—weigh against transfer because Joao permanently resides in this district, and Epic has not identified any other witnesses who would benefit from a transfer to Florida. Indeed, all creditors are proximately distant from the court, with Epic being a Wisconsin-based corporation whose only ties to Florida appear to be the ongoing litigation. With convenience of parties balanced and weighing in neither direction, this argument fails to overcome the heavy presumption of Debtor's choice.

The court also rejects Epic's allegation of forum-shopping. Epic appears to conflate the venue issues that have been raised in the multiple forums for patent litigation with the choice of venue for this bankruptcy case. The Court takes no view as to the venue of the patent litigation,

9

an issue that is best left to the courts presiding over such litigation. As to venue for this bankruptcy, however, venue of this filing is proper under 28 U.S.C. § 1408 for the reasons discussed above. For similar reasons, Epic's reliance on the *Certa Dose* and *Éclair Bakery* cases is misplaced. Motion at 19. In *Certa Dose,* the court explicitly found there was no forum shopping for several reasons including that, like here, the debtor's founder and majority shareholder resided in New York. *In re Certa Dose*, 2021 WL 5177376 at * 12 (Bankr. S.D.N.Y. Nov. 4, 2021). As for *Éclair Bakery*, the facts of that case are markedly different from the facts here. More specifically, the court in *Éclair Bakery* found the debtor to have engaged in forum shopping only after the Debtor previously filed three bankruptcy cases in the Eastern District of New York—and in each instance, the landlord had been granted stay relief—before filing the fourth petition within the Southern District all within the span of two years. *In re Éclair Bakery Ltd*., 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000).

### II. Dismissal

The Court turns next to Epic's request for dismissal. "The court may dismiss a case under [Chapter 7] . . . only for cause." 11 U.S.C. § 707(a). "Cause" is not defined under the Bankruptcy Code, but courts look to equitable considerations and determine "whether cause exists looking at whether dismissal would be in the interest of all parties." *Smith v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007) (citations omitted). The moving party bears the burden of proving cause by preponderance of the evidence. *In re Ajunwa*, 2012 WL 3820638 at *6 (Bankr. S.D.N.Y. 2012) (citing *In re Aiello*, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010)).

The Code sets out three illustrative, nonexclusive examples of cause: unreasonable delay by the debtor, nonpayment of statutory fees or charges, and failure to file information required under 11 U.S.C. § 521(a)(1). 11 U.S.C. § 707(a); *see also Geltzer*, 507 F.3d at 72. "[A]uthorities

10

are split on whether a debtor's bath faith can constitute "cause" under [S]ection 707(a)." *In re Adler*, 673 B.R. 109, 113-14 (Bankr. S.D.N.Y. 2025) (collecting cases). Courts within this district have followed a totality of the circumstances approach by looking into fourteen factors identified by the *Lombardo* court. *Adler*, 673 B.R. at 113-14. The fourteen factors include the following:

(1) The debtor's manipulations having the effect of frustrating one particular creditor;

(2) The absence of an attempt to pay creditors;

(3) The debtor's failure to make significant lifestyle changes;

(4) The debtor has sufficient resources to pay substantial portion of debts;

(5) The debtor inflates expenses to disguise financial well-being;

(6) The debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;

(7) The debtor reduced his creditors to a single creditor in the months prior to [t]he filing of the petition;

(8) The debtor filed in response to a judgment, pending litigation or collection action; there is an intent to avoid a large single debt;

(9) The unfairness of the use of a Chapter 7;

(10) The debtor transferred assets;

(11) The debtor is paying debts to insiders;

(12) The debtor failed to make candid and full disclosure;

(13) The debts are modest in relation to assets and income; and

(14) There are multiple bankruptcy filings or other procedural "gymnastics."

*In re Lombardo*, 370 B.R. 506, 511-12 (Bankr. E.D.N.Y. 2007). However, "there is a 'general consensus' that the standard for finding bad faith is 'stringent' and limited to 'egregious cases that entail concealed or misrepresented assets and/or sources of income . . . and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.'" *Adler*, 673 B.R. at 114 (internal citations omitted).

11

"Many courts have recognized that cause for dismissal . . . may result from circumstances not specifically mentioned in the Code." *In re Murray*, 543 B.R. 484, 490 (Bankr. S.D.N.Y. 2016) *aff'd*, 900 F.3d 53 (2d Cir. 2018) (internal citations omitted). Cause to dismiss may exist even where "bad faith" is not found. *Murray*, 543 B.R. 484, 490 n. 32 (collecting cases). For example, the *Murray* court found cause to dismiss after noting the combination of certain undisputed facts including: extensive pre-petition litigation, the lack of other creditors and the resulting lack of need for *pari passu* distribution, the creditor's ability to seek to recover fraudulent transfers under non-bankruptcy law, and the minimal risk of loss or dissipation of assets without the existence of the bankruptcy case. *Murray*, 543 B.R. at 492. Indeed, the Court "may consider any factors which evidence 'an intent to abuse the judicial process . . .' or, in particular, factors which evidence that the petition was filed to 'delay or frustrate the legitimate efforts of . . . creditors to enforce their rights.'" *In re Syndicom Corp.*, 268 B.R. 26, 49-50 (Bankr. S.D.N.Y. 2001) (quoting *In re Island Helicopters, Inc.*, 211 B.R. 453, 462 (Bankr. E.D.N.Y. 1997)); *see also In re Lin*, 499 B.R. 430, 438 (Bankr. S.D.N.Y. 2013) (finding pre-petition conduct can be "relevant to a debtor's motivation and sincerity in filing for bankruptcy relief.") (citations omitted). Courts routinely consider the presence of a two-party dispute as a factor when determining whether cause exists. *E.g. Murray*, 543 B.R. at 493; *see also In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir. 1997); *In re Westerleigh Development Corp.*, 141 B.R. 38, 40 ("[A] bankruptcy court should not entertain a two-party dispute unless special circumstances exist . . . ."); *In re LLC 1 07CH12487*, 608 B.R. 830, 846-47 (Bankr. N.D. Ill. 2019) (discussing how bankruptcy is "a collective process" and two-party disputes are antithetical to this nature).

Here, Epic argues that nine of the factors present in *Lombardo* exist here. First, Epic argues that, by virtue of indemnifying its customers in the litigation with the Debtor, Epic and its

customers make up all but one of the creditors here, essentially making this bankruptcy a two-party dispute (factor one). Motion at 8-9. Next, Epic points to Debtor filing this petition "just two days after Epic filed its Second Amended Motion to implead Joao" to Epic's lawsuit against Debtor, indicating that this bankruptcy is a strategic response to collection efforts (factor eight). Motion at 9. Further, Epic argues that Debtor received nearly $500,000 in settlement funds, which could have satisfied Epic's judgment (factor two), but were instead transferred to Joao (an insider, factor eleven), artificially rendering the Debtor insolvent (factors four and ten). Motion at 9-10. Finally, Epic points to the lengthy prior litigation, arguing that this bankruptcy filing is a dilatory tactic and forum shopping effort designed to frustrate the rights of its creditors (factors nine and fourteen).

In response, Debtor and Joao dispute that Epic is the Debtor's sole creditor. Debtor's Opp'n. at 7; *see also* Joao's Opp'n at 19. While Epic may have indemnified its customers' claims, the Debtor argues that each of these customer claims remains held by an individual and thus Epic is not the sole creditor. Tr. 34:15-35:1; 37:2-14. Next, Debtor notes Epic did not yet hold a judgment for the attorney's fees awarded in Florida when this bankruptcy was filed, meaning that this bankruptcy was not filed to thwart a judgment. Debtor's Opp'n at 7-8. Debtor further disputes that it has received any "nuisance" settlement funds and, in any event, that receiving such funds "years prior to filing for bankruptcy is irrelevant to [Debtor's] present financial condition" and thus doesn't show an ability to satisfy obligations. *Id*. at 8. Similarly, Debtor also disagrees about the relevance of the pre-petition litigation, arguing "such litigation has no bearing on [Debtor's] current financial situation or the good faith . . . filing." *Id*. But critically, the Debtor does not deny that factors 10 (transferring assets) and 11 (paying debts to insiders) are present but instead maintains that Epic "never informed [Debtor] or Mr. Joao of any litigation misconduct which

13

would arise to the awarding of attorneys' fees" and that Epic "fails to establish how any alleged transfer that occurred prior to the issuance of an unrelated judgment has any bearing on the present bankruptcy." *Id*. at 8-9.

Applying the relevant legal standards here, the Court concludes that Epic has established by a preponderance of evidence that there is cause to dismiss this case under 11 U.S.C. § 707(a).

Functionally, this case is a two-party dispute. Epic and Debtor have been engaged in litigation for over four years in many jurisdictions, with this court serving only as the latest forum. Although this is the Debtor's first bankruptcy filing, it was filed only after the Debtor received several adverse judgments, with the Florida court going so far as making a finding that the Debtor's conduct had been "if not fully spurious, [] dilatory at best." *See Lin*, 499 B.R. at 435-36 (noting that bad faith is a "highly factual determination" and courts consider pre-petition bad faith conduct in assessing cause for dismissal). Further, Epic has indemnified four out of the five alleged creditors, accounting for nearly 98% of the scheduled debt. Epic asserts—and the Debtor does not dispute—that Epic has indemnified its customers and, therefore, Epic essentially holds the claims of its four indemnified clients. *See* Martin Decl. ¶¶ 3-4; Tr. 19:4-20:7; Epic's Reply in Support of Motion at Exs. 5-8. As this indemnification long predates the Petition Date, Epic did not manufacture a two-party dispute within this case. *See In re LLC 1 07CH12487*, 608 B.R. at 848 (considering whether two-party status was manipulated by creditor). While the Debtor scheduled a fifth creditor, Kluger Healey LLC, this party has neither objected to the Motion nor appeared within this bankruptcy case, and this law firm has an exceedingly small claim. So by all measures then, this bankruptcy is primarily a two-party dispute. *C.f. C-TC 9th Ave. P'Ship*, 113 F.3d at 1310-12 (noting that the bankruptcy filing was an outgrowth of the two-party dispute, that the dispute

could be fully resolved in a non-bankruptcy forum, and the primary function of the petition was to serve as a litigation tactic).

Of course, case law recognizes that there may be a bankruptcy purpose in a case that is primarily a two-party dispute. *See Murray*, 543 B.R. at 493 (noting that avoiding a sale of assets or providing the opportunity to appeal an adverse judgment are some legitimate bankruptcy purposes served in a bankruptcy case that is a two-party dispute). But Debtor has failed to identify any bankruptcy purpose here. There has been no sale—scheduled or proposed—of any assets. Indeed, Debtor represents that it is essentially out of business. *See* Debtor's Opp'n at 6 ("[W]ith no active operations since 2024 . . ."); SOFA (listing $0 in revenue since 2023). Nor are there any real assets to administer, with the Debtor listing only one bank account with a balance of approximately $600. Schedules at 3. Moreover, there are no current or active appeals that the Debtor needs time to pursue: the Debtor has exhausted the appeals process for the judgment rendering its patents invalid. So while Debtor claims to have filed bankruptcy to "allow an independent trustee to administer its estate," there is nothing to administer, and no purpose other than to thwart Epic as a creditor. Debtor's Opp'n. at 6. Thus, there is no benefit here to the "collective process" of the Bankruptcy Code. *See LLC 1 07CH12487*, 608 B.R. at 847-48 (collecting cases).[1]

In addition, the Debtor's pre-petition transfers also support dismissal. "Most instances of dismissal for bad faith filing under § 707(a) involve . . . unexplained transfers to place assets beyond the reach of creditors." *In re Genger*, 2023 WL 4311219 at *46 (Bankr. S.D.N.Y. 2023) (quoting *In re Marks*, 174 B.R. 37, 41 (Bankr. E.D. Pa. 1994)). Here, the Debtor does not dispute

---

[1]    When the Court inquired about potential fraudulent conveyance actions, Epic opined that it would receive no benefit from a successful action due to the rising administrative costs. Tr. 22:12-23:7. While the Debtor alluded to the possibility of the Trustee seeking fraudulent transfer actions, the Trustee has taken no steps to indicate he will be pursuing this course of action. Tr. 48:14-19.

15

transferring substantially all assets to Joao, but rather argues these transfers were temporally distant from the judgment awarded against the Debtor and occurred during the ordinary course of operations. Debtor's Opp'n at 8; Tr. 47:13-19. But this argument is unpersuasive, given the totality of circumstances of the ongoing litigation between the Debtor, on the one hand, and Epic and its customers on the other. Further, the Debtor's principal had prior experience in an earlier bankruptcy of one of his other entities, this makes him aware of the significance of transferring assets from the bankruptcy estate. Joao Decl. ¶ 20. Indeed, the transfers between the Debtor and Joao here occurred just six months prior the award of attorney's fees and rendered the Debtor insolvent. Given that the Debtor was engaged in so many prepetition lawsuits, the Debtor had constructive notice of the possibility of being liable for the award of a judgment in any of these cases. *See In re Celsius Network LLC*, 669 B.R. 108, 118-119 (Bankr. S.D.N.Y. 2025) (transfers made during the pendency of litigation or threat of suits by creditors is a "badge of fraud"). While Debtor may argue the transfers occurred during the ordinary course of operations, the Debtor has provided no detailed explanation of its practices of transferring money to its principal, this makes it impossible for the Court to find that the transfer was in the ordinary course. *See* Joao Decl. ¶ 39; Tr. 47:16-19.

After consideration of the circumstances of this case, this Court finds there is sufficient cause for dismissal under 11 U.S.C. § 707(a).

## CONCLUSION

For the forgoing reasons, Epic's Motion to Dismiss is granted, the alternative relief to transfer venue is denied as moot. Epic should settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an

16

exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel

for the Debtor, counsel for Joao, and the Trustee.

Dated: April 15, 2026
White Plains, New York

/s/ Sean H. Lane
_____

UNITED STATES BANKRUPTCY JUDGE